UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>   vs.<br><br>JOSHUA ALAN WADE,<br><br>            Defendant. | Case No. 3:07-cr-111-RRB-JDR<br><br>**ORDER DENYING<br>DEFENDANT'S MOTION TO<br>SHOW CAUSE**<br><br>(Docket No. 1115) |

       Defendant **Joshua Wade** moves for an order directing the Anchorage Correctional Complex (ACC) to show cause why this court should not dismiss all counts against him for its continuing violations of his right to counsel. Docket 1115. The motion is opposed in a response filed by the United States at Docket No. 1133.

It is response the Government concedes that Wade's mail was inadvertently opened three times outside of his presence. Docket 1115, p.2.

Wade argues that the conduct of the Anchorage Correctional Complex employees in opening his mail at the mail room violates Wolff v. McDonnell, 418 U.S. 539 (1974) and Alaska Department of Corrections (DOC) Policy 808.01 VIII D, which provides: "The Department may open and search legal correspondence for contraband only in the presence of the defendant."

## Legal Background

In Wolff v. McDonnell, supra, a civil rights action was brought to challenge administrative procedures and practices at the Nebraska Penal and Correctional Complex. The Supreme Court held that mail from attorneys to inmates could be opened by prison officials in the presence of inmates. The prison regulation under challenge in Wolff provided that "[a]ll incoming and outgoing mail will be read and inspected," without providing any exception for attorney prisoner mail. 418 U.S. at 574. The district court held that if an incoming letter was marked "privilege," thus, identifying that it was sent by an attorney, the letter could not be opened except in the presence of the inmate. The mail from attorneys was not to be read by prison authorities.

The Court of Appeals affirmed this order but added restrictions on prisoner authorities. The Eighth Circuit wrote that prison officials might have to go beyond the face of the envelope if there was any doubt that the letter was actually

from an attorney. The court suggested a telephone call by the prison authorities would be appropriate to settle that factual issue. The Nebraska Penal and Correctional Complex conceded they could not open and read mail from attorneys to inmates but contended that they may open all letters from attorneys as long as it is done in the presence of the prisoners. The inmate asserted that his First, Sixth, and Fourteenth Amendment rights would be infringed under a procedure whereby the State may open mail from his attorney, even though in his presence and even though it may not be read.

The Supreme Court held that the Sixth Amendment's reach is only to protect the attorney-client relationship from intrusion in the criminal setting although the claim brought in Wolff v. McDonnell would insulate all mail from inspection whether related to civil or criminal matters. The Supreme Court declined to decide in that case whether inspection of incoming mail from an attorney places a substantial burden on the inmate's access to the court and instead addressed the question whether, assuming a constitutional right is implicated, it is infringed by the procedure found acceptable by the State.

The High Court found it acceptable that a state required communications from an attorney to be specially marked as originating from an attorney, with his name and address being given in order for the mail to receive special treatment. 418 U.S. at 576. The Court added that it would be permissible for prison authorities to require a lawyer desiring to correspond with a prisoner to first

identify himself and his client to the prison officials to assure that the letters marked privileged are actually from members of the bar. The court stated that opening the mail in the presence of inmates would not constitute censorship as long as the mail was not read. The court recognized the possibility that contraband could be enclosed in letters including those from apparent attorneys warranted prison officials opening the letters. *Id.* at 577. The Supreme Court disagreed with the Eighth Circuit that opening the prisoner's mail could be done only in "appropriate circumstances."

Wade cites <u>United States v. Irwin</u>, 612 F.2d 1182, 1185 (9th Cir. 1980) for the Ninth Circuit's holding that government interference with the defendant's relationship with his attorney may render counsel's assistance so ineffective so as to violate his Fifth Amendment right to due process of law. The facts in <u>Irwin</u> are materially different. In exchange for a dismissal of the criminal charges against him Irwin agreed to become an informant for the police. Based on Irwin's conduct DEA agents concluded that Irwin was "double dealing," i.e., acting as an informant and selling drugs on the side. At trial, the government introduced recordings of telephone conversations between Irwin and a DEA agent who was posing as a large scale drug dealer unknown to Irwin. Some of the telephone calls were made without the consent of Irwin's counsel.

The district court denied the motion to dismiss the indictment on grounds of prosecutorial misconduct in violation of the plea agreement without an evidentiary hearing. Irwin contended on appeal that the Indictment should have

been dismissed because the government agents' "gross intrusion into the attorney-client relationship" deprived him of his Fifth and Sixth Amendment rights. He argued that the agent (Wisdom) counseled Irwin to ignore the advice of his attorney that he not talk to or actively work with police or government agents.

The Ninth Circuit noted that government interference with a defendant's relationship with his attorney may render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel and his Fifth Amendment right to due process of law. 612 F.2d at 1185. The court stated that it was equally clear, however, that not all police action which arguably could be called an interference with the attorney-client relationship is volatile of those rights. The Ninth Circuit held that "mere government intrusion into the attorney-client relationship, although not condoned by the court, is not of itself volatile of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant." 612 F.2d at 1186-1187. The court explained that prejudice may result when evidence gained through the interference is used against the defendant at trial, or from the prosecution's use of confidential information pertaining to the defense plans and strategy, or from government influences which destroy the defendant's confidence in his attorney. The court recognized that other actions designed to give the prosecution an unfair advantage at trial may also result in prejudice.

//

In Irwin the government essentially conceded that it had elicited incriminating evidence from the defendant. The trial judge made it clear that any incriminating statements would be suppressed under the doctrine announced in Massiah v. United States, 377 U.S. 201 (1964). Because of the suppression of the incriminating statements, Irwin was not prejudiced at his trial or in his attorney-client relationship for purposes of his motion to dismiss. In Irwin the court assessed Agent Wisdom's conduct and found no evidence to support Irwin's contention that it destroyed the attorney-client relationship. There was no evidence to suggest that Irwin lacked confidence in his counsel or was dissatisfied with his counsel's representation, or that he had requested new counsel. Finally, the Ninth Circuit found that there was no evidence that the officers' questioning of Irwin sought to discover the strategy which Irwin and his counsel were planning for his defense or disclosed anything in the conversations which the government did not already know.

Wade also relies upon United States v. Haynes, 216 F.3d 789, 797 (9th Cir. 2000) for its holding that a claim of outrageous government conduct premised upon deliberate intrusion into the attorney-client relationship is cognizable where the defendant can point to actual and substantial prejudice. The Ninth Circuit Court of Appeals recognizes that a claim of outrageous government conduct may be premised upon delivered intrusion into the attorney-client relationship where the defendant can point to actual and substantial prejudice. United States v. Haynes, 216 F.3d 789, 796 (9th Cir. 2000) (private investigator who worked for attorney who

initially represented defendants turned over certain privileged information to the government). That court identified two remedies for such misconduct. First, dismissal of the indictment which the court considered drastic, disfavored and thus available only in the most egregious cases. Secondly, suppression at trial of evidence improperly obtained.

The Due Process Clause of the Fifth Amendment bars law enforcement conduct that violates fundamental fairness or is shocking to the universal sense of justice. *See* Rochin v. California, 342 U.S. 165 (1952) (vacating conviction and dismissing indictment where police had pumped stomach of suspected drug pusher to obtain incriminating evidence). The claim of outrageous government conduct premised upon a deliberate intrusion into the attorney-client relationship will be cognizable where the defendant can point to actual and substantial prejudice.

**Application of Law**

The mere opening of legal mail by officials at the jail under the circumstances presented does not constitute outrageous government conduct in the absence of any contention of deliberate intrusion into the attorney-client relationship by or on behalf of the prosecution in the absence of a showing of any actual and substantial prejudice. There is no claim that the mail was read by the DOC officers or agents or that any information contained therein was communicated to or requested by the federal prosecutors or law enforcement officers. There are no facts alleged to suggest that the government purposely intruded into Wade's attorney-

client relationship or that Wade has been subjected to prejudice in his defense against the criminal prosecution.

Counsel for Wade states that they have attempted to remedy the problem with the jail administration to no avail. The government's response indicates that mail room personnel have now been counseled with respect to correct procedures with regard to inmate legal mail and they are adhering to those procedures. Negligent opening of legal mail is ordinarily a matter for a civil rights grievance and civil litigation under the Civil Rights Act. The pleadings indicate that Wade has filed a formal grievance with DOC and the grievance has been answered within the context of administrative procedures.

Wade seeks a show cause order directing the jail administrators to show cause why the charges brought by the United States should not be dismissed because "of continuing violations of Wade's right to counsel." Docket 1115, p.1. The response to this motion was properly made by an Assistant United States Attorney on behalf of the United States, the sovereignty bringing the federal prosecution against Wade. It is proper for the DOC administrators to defend or respond to a challenge to their actions administratively or in a properly filed civil rights action. It is not appropriate to demand DOC show cause why Wade's prosecution should be dismissed.

In order for a motion raising alleged constitutional violations by the government to entitle the defendant to a pretrial evidentiary hearing, the defendant's

moving papers must demonstrate a colorable claim for relief. To be colorable, the defendant's motion must consist of more than mere ball-faced allegations of misconduct; it must raise issues of fact material to resolution of the defendant's constitutional claim. See United States v. Panitz, 907 F.2d 1267, 1273-74 (1st Cir. 1990) (refusal to hold evidentiary hearing on outrageousness claim proper because material facts were not in dispute). The defendant's submissions must demonstrate an issue of fact as to each of the three following elements: (1) the government's objective awareness of an on going, personal attorney-client relationship, (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice. Wade's submissions failed to address elements (2) and (3) above.

    The motion for an order to show cause does not place in issue any material facts which if true would constitute outrageous conduct by the United States nor support a determination that Wade has been subjected to actual and substantial prejudice in his attorney-client relationship. An evidentiary hearing is required if a material issue of fact is raised which, if resolved in accordance with the defendant's contentions, would entitle him to relief. See Irwin, 612 F.2d at 1187. An evidentiary hearing is needed only when the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the court to conclude that relief must be granted if the facts alleged are proved. In the instant case assuming that the factual

allegations in Wade's memorandum are true, an evidentiary hearing is not required.[1]
Wade is not entitled to the relief requested as a matter of law. Wherefore, the defendant's Motion for an Order to Show Cause why the Court Should not Dismiss all Counts, Docket 1115, is hereby DENIED.

DATED this 30th day of December, 2009, at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

---

[1] An attorney's memorandum of points and authorities does not take the place of an affidavit wherein facts asserted are averred to be true.

3-07-cr-111-RRB-JDR WADE @1115 Order Re Motion to Show Cause_mtd.wpd    10

Case 3:07-cr-00111-RRB   Document 1148   Filed 12/30/09   Page 10 of 10